IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Case No.: 3:21-cr-161-RAH-SMD |
| ) | |
| SAWELJIA TYREE FLOYD ) | |

# RECOMMENDATION OF THE MAGISTRATE JUDGE

Defendant Saweljia Tyree Floyd ("Floyd") is charged in a five-count indictment with various drug and firearms crimes. *Indictment* (Doc. 1). Floyd moves the Court to suppress the evidence of these crimes that was found in a house where Floyd stayed pursuant to a state search warrant. *Floyd's Mot.* (Doc. 30). Floyd's argument for suppression is two-fold. First, Floyd argues that the affidavit supporting the search warrant does not establish probable cause and that no good-faith exception saves its execution. *Id.* Second, Floyd argues that—even if the affidavit establishes probable cause—it contains material misstatements and/or omissions, central to the finding of probable cause, that were made deliberately or recklessly by the affiant. *Id.* at 7-10. After holding a hearing on the matter and considering the evidence and arguments presented, the undersigned RECOMMENDS that Floyd's Motion to Suppress (Doc. 30) be DENIED.

**I. FINDINGS OF FACT[1]**

In early 2018, Detective Dustin Holt ("Detective Holt")—a narcotics investigator

---

[1] Findings of fact made at a suppression hearing are based on a preponderance of the evidence. *United States v. Beechum*, 582 F.2d 898, 913 n.16 (5th Cir. 1978) (citing *Lego v. Twomey*, 404 U.S. 477, 489 (1972)).

with the Auburn Police Department ("APD")—began investigating Floyd. *Transcript* (Doc. 93) pp. 13, 15. As part of his investigation, Detective Holt set up surveillance near Floyd's girlfriend's residence, a single-family home located at 312 Jones Street in Auburn, Alabama. *Id.* at 6, 15-18, 27-28. Detective Holt used a confidential informant ("CI") to purchase cocaine from Floyd at this location. *Id.* at 29, 35. These purchases occurred at the back door of the Jones Street residence. *Id.* at 29. To Detective Holt's knowledge, the CI never entered the residence, nor did the CI observe drugs, contraband, or guns within the residence. *Id.* at 26-27, 30.

On May 2, 2018, Detective Holt and Sergeant Jimmy Butler ("Sergeant Butler")—a sergeant in the APD narcotics unit—conducted a controlled buy with the same CI at 312 Jones Street. *Id.* at 6, 18, 26, 50-51. Prior to the buy, Detective Holt and Sergeant Butler met with the CI at a secondary location. *Id.* at 18, 51. They searched the CI's vehicle, checked the CI's shoes and pockets, and patted down the CI for narcotics and found none. *Id.* at 46, 51. They provided the CI with identifiable currency and equipped him with an electronic monitoring device.[2] *Id.* at 18, 51. Detective Holt and Sergeant Butler then followed the CI to 312 Jones Street and parked in a church parking lot nearby. *Id.* at 19, 52. From that location, they used binoculars to observe the interaction between the CI and Floyd.[3] *Id.* at 24, 29, 33, 43, 53-54, 59. Detective Holt and Sergeant Butler were also able

---

[2] The testimony of Detective Holt and Sergeant Butler differ as to the type of monitoring device assigned to the CI. Detective Holt recalls that the CI was equipped with both audio and visual monitoring. *Transcript* (Doc. 93) pp. 22-23. Sergeant Butler recalls that the CI was equipped with only audio monitoring. *Id.* at 59-61. No audio or video recording of the controlled buy was produced.

[3] During the hearing, aerial photographs of the church and the residence located at 312 Jones Street were admitted into evidence. *Floyd's Exs. 3-6* (Doc. 92-2) pp. 9-12. These photographs depict multiple trees and

to hear the interaction between the CI and Floyd from the monitoring device assigned to the CI, and Detective Holt testified that he could watch it on a video monitor. *Id.* at 22-23, 48, 51, 59, 61.

From their position at the church, Detective Holt and Sergeant Butler observed the CI enter the backyard of the residence and interact with several individuals. *Id.* at 26, 35, 54. They watched the CI approach the back door of the house. *Id.* at 18, 35. Floyd opened the back door of the house, and a hand-to-hand exchange between Floyd and the CI occurred. *Id.* at 18, 35, 54. The CI then left the residence and met with Detective Holt and Sergeant Butler at an offsite location. *Id.* at 35, 55. There, the CI turned over a substance that Detective Holt field tested and determined to contain cocaine. *Id.* at 18, 37. The CI informed the officers that he purchased the cocaine from an individual he identified as Floyd. *Id.* at 36, 55. During this meeting, the CI did not have the currency he was previously provided for the purchase. *Id.* at 37, 55.

On May 4, 2018, Detective Holt applied for a search warrant for the house at 312 Jones Street. *Id.* at 25. His affidavit in support of the search warrant reads as follows:

> During the past several months, the Auburn Police Division narcotics unit, has received information concerning the illegal sale of quantities of Cocaine by Sawelia Lyrel Floyd, alias "Tyree", at 312 Jones Street, Auburn, Lee County, Alabama. During this investigation purchases of Cocaine have been made from Sawelia Lyrel Floyd, alias "Tyree", at this residence.
>
> Within the past 72 hours Detective Dustin Holt and Sergeant Jimmy Butler met with a confidential informant, herein referred to as CI, and made a

---

at least one house separating the church and the residence. Despite these visual encumbrances, both Detective Holt and Sergeant Butler maintain that, from their position at the church, they were able to clearly see the back of the house and observed the CI's interaction with Floyd. *Transcript* (Doc. 93) pp. 24, 29, 33, 43, 53-54, 59. As explained *infra*, the undersigned finds their testimony credible and is not persuaded that the photographs contradict their statements that they had an adequate sightline to the residence.

> controlled buy of Cocaine, from Floyd at this residence. During this meeting the CI and CI's vehicle were searched and the CI was fitted with an electronic transmitting device and provided with U.S. currency, with pre-recorded serial numbers, to purchase Cocaine with. Detectives then followed the CI to 312 Jones Street, Auburn, Alabama and observed the CI meeting with Floyd. Detectives also monitored the transaction by visual and audio surveillance. Upon completion of the transaction the CI met with detectives and turned the Cocaine over to Detective Dustin Holt's control. Detective Dustin Holt verified the substance to have the presence of Cocaine, by the use of a field test kit. Detectives have utilized CIs to make buys, of Cocaine, from Floyd, at 312 Jones Street, Auburn, Alabama in the past.

*Floyd's Ex. 1* (Doc. 92-2) p. 2. Detective Holt and other officers executed the search warrant on May 8, 2018. *Transcript* (Doc. 93) p. 37. Various items including drugs, drug paraphernalia, money, and a firearm were located inside the residence. *Id.* at 37. The prerecorded currency used during the May 2 controlled buy was not recovered. *Id.* at 25, 37.

## II. APPLICABLE LAW

The Fourth Amendment to the United States Constitution guarantees the right of individuals "to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizure." U.S. CONST. AMEND. IV. It further provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." *Id.* Probable cause to support a search warrant exists when "there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983); *United States v. Trader*, 981 F.3d 961, 969 (11th Cir. 2020); *United States v. Brundidge*, 170 F.3d 1350, 1352 (11th Cir. 1999). To establish probable cause, a search warrant affidavit should make "a connection between the defendant and the residence to

be searched and a link between the residence and any criminal activity." *United States v. Martin*, 297 F.3d 1308, 1314 (11th Cir. 2002)); *see also United States v. Shabazz*, 887 F.3d 1204, 1214 (11th Cir. 2018).

In reviewing the validity of a search warrant, a court must consider the totality of the circumstances. *See Brundidge*, 170 F.3d at 1352. This requires a court to examine a supporting affidavit "in its entirety" instead of "judging [its] bits and pieces of information in isolation." *Massachusetts v. Upton*, 466 U.S. 727, 732 (1984). Additionally, a reviewing court should apply "a realistic and commonsense approach" rather than a "hypertechnical" interpretation of supporting affidavits, as such an approach "promote[s] the high level of deference traditionally given to magistrates in their probable cause determination." *United States v. Miller*, 24 F.3d 1357, 1361 (11th Cir. 1994).

Finally, affidavits supporting search warrants are presumptively valid. *United States v. Gamory*, 635 F.3d 480, 490 (11th Cir. 2011). To overcome this presumption, a defendant must make a substantial preliminary showing that the affidavit contained a false statement or omission, which was included knowingly and intentionally or with reckless disregard for the truth. *Id.* If the defendant makes such a showing, the defendant may void the warrant and the fruits of its search if he shows that—but for the misrepresentations or omissions of the affiant—probable cause was lacking. *See id.*; *see also Franks v. Delaware,* 438 U.S. 154, 156 (1978).

III.   ANALYSIS

Applying the above standard, the undersigned concludes that Floyd's Motion to Suppress should be denied.

### 1. Detective Holt's affidavit provides probable cause to search the residence at 312 Jones Street.

Floyd argues that Detective Holt's affidavit lacks sufficient information to establish probable cause to search the residence at 312 Jones Street. *Floyd's Mot.* (Doc. 30) p. 5. First, Floyd argues that the affidavit lacks sufficient detail as to the "information" provided to APD about illegal drug sales occurring at 312 Jones Street *prior* to the May 2 controlled buy. *Id.* at 6-7. He asserts that the affidavit does not provide (1) the timeframe for those prior buys, (2) whether the buys were monitored, or (3) any information regarding the reliability of the CIs used in the buys. *Id.* at 6. Second, Floyd argues that the affidavit "offers only minimal corroboration" that the May 2 purchase occurred. *Id.* at 6. Specifically, Floyd asserts that the affidavit does not provide information regarding the CI's reliability nor does it sufficiently describe the officers' alleged observations of the CI and Floyd. *Id.* Further, Floyd notes that, while the affidavit suggests the May 2 transaction was monitored by visual and audio surveillance, no video or audio recording exists. *Id.* Thus, without a recording of the transaction or more specifics as to what the officers observed, Floyd contends that the affidavit lacks sufficient detail regarding the May 2 controlled buy to establish probable cause. *Id.*

In relevant part, Detective Holt's affidavit states the following. During the months leading up to the search warrant application, APD "received information concerning the illegal sale of . . . Cocaine by . . . Floyd . . . at 312 Jones Street[.]" *Floyd's Ex. 1* (Doc. 92-2) p. 2. As part of its investigation, "purchases of Cocaine have been made from . . . Floyd . . . at this residence." *Id.* Detective Holt's affidavit further states that, within the last

seventy-two hours, he and Sergeant Butler executed a controlled buy at the 312 Jones Street residence, wherein a CI purchased cocaine from Floyd. *Id.* Detective Holt averred that he met with the CI prior to the buy and searched the CI and the CI's vehicle for narcotics. *Id.* He indicated that he provided the CI with prerecorded currency to complete the transaction along with an electronic monitoring device. *Id.* The affidavit states that detectives then followed the CI to 312 Jones Street and actually observed the CI's meeting with Floyd, and that they monitored the transaction through audio and visual surveillance. *Id.* Further, Detective Holt avers that, upon completion of the transaction, detectives met with the CI, who did not possess the prerecorded currency but did possess a substance that field tested positive for cocaine. *Id.*

Based on these assertions, the undersigned finds that the affidavit establishes a sufficient connection between Floyd, the residence at 312 Jones Street, and criminal activity. To be sure, the affidavit does not provide information regarding the reliability of the CI used to make the May 2 buy or the buys that preceded it. Nor does the affidavit indicate when the buys occurred prior to May 2. While these facts might be necessary for an affidavit based on a CI's tip of criminal activity, they are not required to establish probable cause when, like here, the affiant has personally witnessed a properly executed controlled buy. *See United States v. Roundtree*, 299 F. App'x 905, 907 (11th Cir. 2008) ("It is clear that a properly executed controlled buy . . . is sufficient, standing alone to establish probable cause."); *see also United States v. Johnson*, 444 F. App'x 424, 426 (11th Cir. 2011) (finding that an affidavit established probable cause to search a house based on the allegation that a detective directly observed two controlled buys at the house). Indeed,

7

Detective Holt's firsthand observation of the controlled buy, which was conducted according to a set of procedures designed to ensure its reliability, provides independent corroboration of the CI's veracity relating to the May 2 controlled buy and the previous controlled buys executed with the CI at 312 Jones Street. *See Johnson*, 444 F. App'x at 426 ("[T]he detective's direct observation at the house of two controlled buys, conducted according to a set of procedures designed to ensure their reliability[,] . . . provide sufficient independent corroboration of the veracity of the CI.") Therefore—even without specifics regarding the CI's reliability, the previous buys, or a play-by-play of the officers' observations during the May 2 controlled buy—Detective Holt's assertions that he witnessed a properly executed controlled buy at the residence establish a fair probability that evidence of a crime would be located at 312 Jones Street. As such, the affidavit establishes probable cause to search the residence. *See United States v. Garcia*, 983 F.2d 1160 (1st Cir. 1993) (finding that an affidavit that provided no background information as to the CI's reliability, but was based on a single controlled buy, established probable cause).

2. **Floyd has not met his burden under *Franks* to show that Detective Holt lied in his affidavit.**

Alternatively, Floyd argues that Detective Holt's affidavit contains material misrepresentations central to the probable cause finding and/or omissions that, had they been included, would negate the probable cause finding. *Floyd's Mot.* (Doc. 30) pp. 7-10. Specifically, Floyd argues that Detective Holt misrepresented his ability to see the May 2 controlled buy. *Transcript* (Doc. 93) p. 67. In support, Floyd relies on photographic evidence he submitted at the hearing depicting Google Earth aerial and street views around

8

Jones Street. *Id.* These photographs show multiple trees and a house separating the church parking lot, where Detective Holt was positioned, and the back door of the residence, where the transaction took place. *Id.* Floyd asserts that these photographs undermine Detective Holt's sworn statement that he observed a controlled buy because they show that his view was obstructed. *Id.* Floyd also notes that Detective Holt and Sergeant Butler have different recollections regarding whether the controlled buy was recorded, and whether it was monitored via audio, video, or both. *Id.* at 66. He suggests that the discrepancies in the officers' testimonies indicate that the controlled buy never occurred. *Id.* Further, Floyd relies on his own testimony that he did not sell drugs at the residence located at 312 Jones Street on May 2, 3, or 4, 2018. *Id.* at 8, 10-12. He asks the Court to credit his testimony that a drug sale did not occur and thereby find that Detective Holt fabricated his testimony that he observed the controlled buy. *Id.* at 66.

As for the omissions from the affidavit, Floyd contends that Detective Holt excluded key facts that would negate the probable cause finding. *Id.* at 67. These omissions include facts regarding the CI's reliability and the assertion that the CI never saw drugs, contraband, guns, or money *inside* the Jones Street residence. *Id.*

Floyd has not shown—either through his photographic evidence of the area, the discrepancies in the officers' testimony regarding the CI's electronic monitoring device, or his own testimony that he did not sell drugs—that Detective Holt was unable to observe the May 2 controlled buy. While Floyd's Google Earth photographs show obstructions between the church and the residence, they do not establish that Detective Holt's line of sight to the back door was *completely* obstructed. And, while Detective Holt and Sergeant

9

Butler have slightly different recollections about the electronic device used to monitor the CI and whether the controlled buy was recorded, both officers were consistent and unwavering in their testimony that they directly observed the controlled buy from the church parking lot using binoculars. The undersigned finds the officers' testimony concerning the controlled buy credible. Floyd has a strong personal interest in the outcome of this case and consequently in denying that he sold drugs to the CI, and the undersigned does not find his testimony credible. Floyd has not presented sufficient evidence that Detective Holt misrepresented his observation of the May 2 controlled buy to overcome the warrant.

Further, Floyd has not shown that the warrant lacked probable cause due to omissions of critical information. As discussed in the previous section, any omission related to the CI's reliability or the prior buys is not necessary to establish probable cause. Further, any omission that the CI did not enter the residence or observe narcotics, contraband, or guns therein is not essential to the probable cause determination. Indeed, while probable cause requires more than suspicion, it does not require convincing proof. *See United States v. Phillips*, 327 F. App'x 855, 858 (11th Cir. 2009). Detective Holt's observation of Floyd opening the back door and selling drugs to the CI is sufficient to reasonably infer that the house was a base for drug dealing. Accordingly, there was more than a fair probability that drugs would be found in the home. *See id.* at 860 ("The warrant's statement that [the defendant] was involved in a drug transaction and that drugs and drug money were discovered in his car were enough to lead to a reasonable inference that [the defendant] was dealing drugs and that there was a 'fair probability' that more drugs would

be found in his home."). As such, had Detective Holt stated in the affidavit that the CI never observed drugs within the residence, the affidavit would have still established sufficient probable cause to search the house.

Because Floyd has not shown that Detective Holt's affidavit contained material misrepresentations or omissions, made knowingly or intentionally, that were central to the finding of probable cause, he has failed to meet his burden under *Franks*. As such, he has not shown that the affidavit is not valid.

### 3. The *Leon* good faith exception applies.

"Evidence seized as the result of an illegal search may not be used by the government in a subsequent criminal prosecution." *Martin*, 297 F.3d at 1312. "The exclusionary rule, as it is known, is 'a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect.'" *Id.* One exception to the exclusionary rule is the "good faith" exception set forth by the Supreme Court in *United States v. Leon*, 468 U.S. 897, 922 (1984). *Id.*

The *Leon* exception "stands for the principle that courts generally should not render inadmissible evidence obtained by police officers acting in reasonable reliance upon a search warrant that is ultimately found to be unsupported by probable cause." *Martin*, 297 F.3d at 1313. "The *Leon* good faith exception requires suppression 'only if the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause.'" *Id.* "The purpose of the exclusionary rule is to deter unlawful police misconduct; therefore, when officers engage in 'objectively reasonable law enforcement activity' and have acted in good faith when

obtaining a search warrant from a judge or magistrate, the *Leon* good faith exception applies." *Id.* Moreover, reviewing courts "can look beyond the four corners of the affidavit and search warrant to determine whether [the officer] reasonably relied upon the warrant." *Id.* at 1318.

The *Leon* exception applies in all but four circumstances: (1) where the judge issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth; (2) where the issuing judge wholly abandoned his judicial role; (3) where the affidavit supporting the warrant is so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; and (4) where the warrant is so facially deficient, i.e., in failing to particularize the place to be searched or the things to be seized—that executing officers cannot reasonably presume it to be valid. *Id.* at 1313.

Here, the undersigned finds that Detective Holt was not dishonest or reckless in preparing his search warrant affidavit. He planned and conducted a controlled buy from Floyd at the Jones Street residence. He personally witnessed the CI buy drugs from Floyd at the back door. Based on this reasonable law enforcement investigative activity, he then acted in good faith and obtained a search warrant for the residence. His testimony at the hearing further shows that he had previous interactions with the CI, who purchased narcotics from Floyd at that same location prior to May 2. From his personal observations alone, then, Detective Holt had an adequate reason to believe that there was probable cause to support a search warrant for the residence. *See United States v. Williams*, 177 F. App'x 914, 919 (11th Cir. 2006) (declining to determine whether a search warrant was supported

by probable cause but applying the good faith exception where an officer observed a controlled buy); *United States v. Harris*, 172 F. App'x 950, 959-60 (11th Cir. 2006) (assuming arguendo that an affidavit failed to establish probable cause but applying the good faith exception where an officer was not dishonest in asserting that he witnessed a controlled buy). Therefore, the undersigned finds that Detective Holt reasonably relied on the warrant to search the Jones Street residence. And, because none of the *Leon* exceptions apply, the evidence seized as a result of that search should not be suppressed.

## IV.  CONCLUSION

For the reasons stated above, the undersigned RECOMMENDS that Floyd's Motion to Suppress (Doc. 30) be DENIED. It is further

ORDERED that the parties shall file any objections to this Recommendation on or before January 6, 2022. A party must specifically identify the factual findings and legal conclusions in the Recommendation to which objection is made; frivolous, conclusive, or general objections will not be considered. Failure to file written objections to the Magistrate Judge's findings and recommendations in accordance with the provisions of 28 U.S.C. § 636(b)(1) shall bar a party from a de novo determination by the District Court of legal and factual issues covered in the Recommendation and waives the right of the party to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); 11TH CIR. R. 3-1. *See Stein v. Lanning Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982). *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (en banc).

DONE this 23rd day of December, 2021.

_____
Stephen M. Doyle
CHIEF U.S. MAGISTRATE JUDGE